Mr. Justice Cox
delivered the opinion of the Court.
This is a bill filed in equity upon an alleged agreement entered into between the complainant and one Mrs. Julia Marvin. The suit is brought against the heirs and administrator of Mrs. Marvin. It came before the Court below on demurrer ; the demurrer was sustained ; a decree was passed dismissing the bill and an appeal taken from that decree to this Court. On the argument it was urged that in the the consideration of this demurrer the court was not confined *203 to the exact facts stated in the bill,but might assume that other facts were capable of being proved under the general aver - ments of the bill; in other words, it was sought by the complainant to take advantage of the ambiguities of the bill.
We do not understand the law to be to that effect. The bill is ambiguous 'in some respects, but the averments of the bill are to be taken most strongly against the complainant himself, and any ambiguity in them must operate to his disadvantage instead of to his benefit.
Now, the facts substantially stated by the complainant are : First, that Mrs. Marvin was seized in her lifetime of sub-lot i, square 179, and in March 1879 — before that we are bound to suppose that she was seized of it — an agreement was entered into between fhe complainant and Mrs. Marvin,by which the complainant agreed to contribute in money, and in work and labor, one-half of the original cost of the piece of land and of a dwelling house to be erected thereon, and in consideration thereof, Mrs. Julia Marvin undertook and agreed to convey to the complainant a half interest in the said piece of ground and the dwelling house to be erected thereon, so that the same should be jointly owned by the complainant and the said Julia A. Marvin. At the time of the making of said agreement there was no note or memorandum thereof in writing, but, in the performance of the, same, on the part of the complainant, he gave his personal attention to the purchase of the materials for said dwelling and the erection of the same, and also paid, laid out and expended a large sum of money, to wit; the sum of $4,000, in defraying the cost of the erection of the said dwelling house. The bill goes on aver that the complainant rendered his personal services in the year 1879 and paid the sum of $4,000 towards the cost of the dwelling in different amounts,and through a period of over six years, the last of the payments being in the year 1884. He avers that $4,000 and the value of his services in selecting and purchasing the material, and superintending the erection of the building, are equal to one-half of the cost of the lot and building. He then proceeds to say that subsequently Mrs. Marvin received the rents from the building from the year 1879 until her death, which took *204 place early in 1890 or in 1889; and in 1888 she executed a deed of trust on the premises to secure $10,000 to one Amos B.White for money borrowed. That is the substance of the case stated by the complainant. There are other matters stated which I shall allude to presently, which were very little more than explanatory of the delay on the part of the complainant in the institution of the suit. Now, upon this statement of the complainant’s case, we would be prepared to expect a prayer for a decree for specific performance, but that is not the relief prayed. The prayer is, first, that the cause may be referred' to an auditor to take and report to the court the following accounts:
1. “An account of the debt claimed by plaintiff to be due and owing to him from the estate of the said Julia R. Marvin.
2. “An account of the debt due and owing to the said Amos C. White from the estate of the said Julia R. Marvin and all other debts and demands against the same.
3. “An account of the value of the said piece or parcel of land in the City of Washington, and the dwelling house erected thereon, and also an account of any other real estate of which the said Julia R. Marvin died seized and possessed and the value thereof; and that it be also referred to the auditor to ascertain who are the next of kin and heirs at law of the said Julia R. Marvin, deceased.
4. “An account of the rents of the said house and lot received and collected by the said Julia R. Marvin in her lifetime, and also a further account of any rent due and unpaid since her death.
5. “An account of the transactions of Thomas B. Hood, administrator, showing the collections made by him from the sale of the personal estate of the said Julia R. Marvin, or otherwise, and what disposition has been made of the same’’
He next asks that ‘ ‘the court will make a decree directing the payment to the plaintiff of a sum equal to one half the value of the said house and lot hereinbefore mentioned and described, and one half of the rents of the same received and collected by the said Julia R. Marvin in her lifetime and *205 accruing since her death; that a decree may be made directing the sale of the said house and lot for the purpose of paying the debt claimed by the plaintiff to be due and owing to him from the estate of the said Julia R. Marvin, and the distribution of the balance of the proeeeds of such sale among those entitled, according to their respective rights and interests; that a decree may also be made for the sale of the other real estate of which the said Julia R. Marvin died seized and possessed, if the same shall be necessary for the payment of her debts,” and then there is a prayer for process and that the plaintiff may have “such other and further aid and relief as equity and good conscience may dictate and the nature of his case may require.”
It will be observed that the specific prayers for relief do not refer to a specific performance of an agreement to convey one half of this property to the plaintiff. He claims that the estate of Mrs. Marvin is indebted to him for two things; first, a sum equal to one half of the value oHthe property which she, according to the statement in the bill, was to convey to him; and secondly, one half of the rents and profits which she collected from the improvements. Of course this is purely a matter of the collection of a claim for money due him on account of money laid out and expended by him, or a claim for damages for not conveying the house to him. It is a claim which might have been asserted at law, and it is one of the grounds of demurrer in the case, that there is an adequate remedy at law, and that is the proper remedy for the collection of this kind of an account. There is no ground whatever for coming to a court of equity for damages for the failure to specifically perform the alleged contract. There are cases in which on the failure to obtain specific performance, compensation has been allowed in damages. A party, for instance, goes into possession under a contract which cannot be performed; he is entitled to be allowed compensation for his outlays and actual losses, which would be ascertained by an issue of q^lantum damnificatus, but there is no ground for going into equity, broadly claiming damages for the non-performance.
This question of damages was discussed in the case of *206 Hempsball vs. Stone, in 5 Johnson’s Chancery Reports, page 193. In this case there was a contract to purchase land, but the purchaser was slow in making his payments and the defendant conceived himself released from obligation to complete the contract and sold the property to a third person, who bought it without notice of the first contract. The plaintiff filed his bill in a court of equity for specific performance and under that he sought to recover damages as compensation. The Court says: “The jurisdiction of the Court on this point was discussed in the case of Hatch vs. Cobb, 4 Johnson’s Chancery Reports, page 559, and it was considered that the Court ought not, except in very special cases, to sustain a bill merely for the assessment of damages. The more I have reflected on the subject, the more strongly do I incline to that opinion. Rord Eldon intimated in Todd vs. Gee, 17 Vesey, page 273, that the whole course of previous authority was. against the decision of Rord Kenyon in Denton vs. Stewart, 1 Cox, page 258; and in that case Rord Eldon said the defendant had disabled himself pendente lite from performing the agreement, and that fact materially distinguishes that case from this. When the defendant had disabled himself before the filing of the bill and the plaintiff knew of that fact before he commenced his suit (and I consider such knowledge a material circumstance in such case), it is then reduced to the case of a bill filed for the sole purpose of assessing damages for a breach of contract which is a matter strictly of legal, and not of equitable jurisdiction. The remedy is clear and perfect at law by an action upon the covenant; and if this court is to sustain such a bill, I do not know why it might not equally sustain one in every other case sounding in damages and cognizable at law. This court is not the ordinary and appropriate tribunal for such actions.”
There are certain other objections to this claim for one-half of the value of the property, and one is that of the Statute of Rimitations, which was also one of the grounds of demurrer. The services rendéred by the plaintiff, he says, were rendered in the years 1879 an(l 1880, and this bill was filed in 1890, ten years afterwards. The payments .made by *207 him run. through six years, the last one being, I think, in 1884, six years before the bringing of this suit, so that the claim for compensation for the rendition of those services is clearly barred by the act of limitations. But it is claimed that there were acknowledgments made by Mrs. Marvin in her lifetime, which would be an answer to that defense. The bill, however, does not aver any acknowledgment by her of any pecuniary debt, but it avers that she repeatedly acknowledged that she was under obligations to the defendant, and said that she looked upon the house as belonging jointly to him and her, and that she had made her will giving the whole of it to him at her death. There was no real acknowledgment that she was pecuniarily indebted to him.
In addition to the claim for half of the value of the house and lot, he claims one-half of the rents collected by Mrs. Marvin and her heirs since her death. This claim for rents also would be barred by the Statute of limitations to a certain extent. It is not averred in the.bill that a conveyance of an interest in the property was to be made before he had completed his part of the contract by making the payments. The payments for the house and lot were not completed until 1884, so that there could not have been a right to claim a conveyance until that time. If we understand the averments of the bill, no rents could be recovered before that time and this defense of limitations would prevail against the recovery of rents accruing before three years before the suit was instituted. that the claim, under any circumstances, would be limited to rents received from June, 1887. But there is a further objection to this. As I have stated, the claim for rents would only be on the theory that the plaintiff would be entitled to a specific performance of the contract to convey the land. It is possible, and it may be admitted, that a joint tenant, co-parcener or a tenant in common, would have a right to file a bill in equity for an account of rents received by a co-owner, and he would not be confined, perhaps, to an action at law to recover as for money had and received, but that must be a’ case in which the parties are admittedly joint owners.
*208 But where a bill is filed for the purpose of compelling •specific performance, I have never known a case in which a •court recognized the right of a party to an accounting of rents received by the defendant from the time that the alleged contract to convey was made. The right to a specific performance is not a strict right but one depending on the sound discretion of a court of equity, and therefore the complainant has no right, strictly, to claim a part of the income as if he and defendant had been the joint owners of the' land, when he becomes the owner only from the time when the court decrees specific performance. But it is quite clear that if he could claim the rents and profits at all, it would only be on the theory that he is entitled to the land itself, and to a specific performance of a contract to convey it. I should state here that it is at least doubtful whether the relief by specific performance could be given under this general prayer for relief, because that is really contrary to the whole scheme of the bill. It is not the relief that the plaintiff wants. Since a contract was made with him, as he alleges, Mrs. Marvin conveyed her property to secure a debt of $10,000 which is. about one-half of the value of the laud. She has practically conveyed then one-half of the value, retaining an equity which is only about one-half the value, and if the court would decree a conveyance of one-half of the interest remaining in her heirs, it would give the plaintiff only one-fourth the value of the land. He claims that he is entitled to one-half of the value, and for that reason, probably, instead of asking a decree for the conveyance of an undivided half interest which would be subject to that deed of trust, he asks for a sum of money equal to one-half of the entire value of the land. So that a decree of specific performance seems to be entirely outside of the scheme and scope of this bill of complaint, and it is not that relief which is sought by the bill. But suppose, however, that he does ask for specific performance. He is met at once with the objection of the Statute of Frauds. That is relied upon as one of the grounds of demurrer. The objection is attempted to be overcome by proof of part performance of the contract. But it is very well settled that payment of a consideration is *209 not such a part performance as will take the case out of the Statute of Frauds, and, whether that consideration consists of money, or personal services, the rule seems to be the same. Authorities have been cited which I will refer to if necessar3r, but it was conceded on both sides that mere payment either by personal services, or money, is not the kind of part performance which will furnish an answer to the objection of the Statute of Frauds. The part performance must be that sort of a partial execution of the contract which results from entering into possession, making outlays on the property, etc., where a party cannot be put back into the condition in which he was before; or, at least, completely restored to his former position. It that case the court would decree specific performance. That is not the case presented here, because the bill here shows that Mrs. Marvin herself was in possession from the time that this house was erected and has always received the rents, and it does not show that the plaintiff ever took possession at all, and still less, that he did so in pursuance of any contract for the purchase of an undivided moiety.
One thing which seems to be relied upon is that the plaintiff had been misled and defrauded by Mrs. Marvin, by her repeated representations that she would take care of him when she made her will, and would leave the whole property to him after her death., By these representations he says he was lulled into security and failed to take any steps to have his rights settled. This promise on her part was to do something in the future which does not constitute a fraud, and which would not be an answer even to the defense of limitations. The kind of fraud that would be an answer to the defense of limitations must be some concealment or misrepresentation as to existing facts which prevented the plaintiff from sooner instituting his suit. We do not think, therefore, that there is any way of getting over this defense which has been interposed by way of demurrer. It might be further remarked herd that the case does not present a very strong one for relief. It is not stated what the value of the ground was or what estimate was agreed upon as the value of the plaintiff’s services to be rendered, or what the *210 house cost, or when the deed was to be executed, conveying the interest to the plaintiff, whether at the time of the agreement, or after the services were rendered; and a court of equity would hesitate, on a bill for specific performance, to enforce such a contract as that after the death of the party said to be jointly interested, when she cannot be heard from and when the contract can only be proved by the testimony of the plaintiff himself, there being no witnesses to it, and no declaration of hers proved to have' been made to other persons, at any time, as to the terms of this alleged agreement. A court would find a great deal of difficuly in enforcing a contract so vague in its terms.
We are, therefore, of the opinion that the ruling of the Court below on the demurrer must be sustained.